Yes, our third case for this morning is Campbell v. Kallas. Mr. Zaitlin. Misha Zaitlin, Solicitor General, on behalf of the defendants. Qualified immunity protects public officials from damages liability except in the rare circumstances where binding case law makes clear, beyond the debate, that the conduct in question violates the Constitution. Here the defendants were not put on notice by any clearly established law that denying sex reassignment surgery to the defendant, making the defendant the second prisoner in the United States ever to receive this surgery. So let me ask you this question. Obviously both parties have learned their lesson in this case, and so this entire argument is all about how do you characterize the issue and what's the right level. So suppose it's 1992, and the state of Wisconsin has some prisoners who are HIV positive, which at the time was roughly a death sentence, except that the antiretroviral drug cocktail has just come in the market. So there aren't any prisoners in the United States who have yet had that medicine administered to them, and yet science says this really gives you a shot at not dying from AIDS. Is it your position that because it hadn't been tried yet, the state had no obligation to administer that medication? Well, Your Honor, the legal context that the Supreme Court has set up is for cases, the vast majority of cases, you need specific case law. I understand that, and I'm trying to ask you is, well, let me make, I don't want you to waste your time answering something that's maybe not the question I'm asking. You seem to think that specific means medical procedure by medical procedure. I don't see that in the law, and so what I'm trying to get at is what's your authority for medical procedure or drug by drug, as opposed to saying that it's got to be person by person, or there's got to be some other specific prison context, very important. You can't just sort of grandiosely say, do good things to people, of course. So I'm just not sure why it's medical procedure by medical procedure. Right, Your Honor, we are not arguing medical procedure by medical procedure. If I could set up the way the Supreme Court has set it up. In the vast majority of cases, you need a specific case law on point. There are, however, a small, a rare category of cases that the higher level generality would suffice, and those are the obvious cases. If in your hypothetical it was patently obvious that this drug was effective, that there was nothing about the prison context that changed its effectiveness, then you might have, in that AIDS drug context, one of those rare, obvious cases. Okay, so you're saying that it's medical procedure by medical procedure in the first group of cases, that if you haven't been given antiretroviral drugs in the past, then there's no right to do that. If there hasn't been a vaccine for some sort of, for measles, then you can't require that all your prisoners get vaccinated for measles. So you're basically on a procedure by procedure theory, unless there's something. I'm not quite sure what we're talking about here. No, Your Honor, the question is... Because your argument here is procedure by procedure. You're saying SRS is simply not a procedure that the Supreme Court has ever happened to address. Boy, in the field of medicine, that means most people don't get any medical treatment at all. No, Your Honor, the Supreme Court's case law makes the difference on procedure by procedure obvious versus not obvious. I thought your argument was more limited than categorical. I thought what you were saying is that there's not been a determination that sex reassignment surgery has been ruled out in this state for inmates. So it's not that under no circumstance, no way, no how, is sex reassignment surgery ever going to get it. I thought your point was that on this particular record, there was a very careful evaluation of Campbell and a determination informed by expert advice that the sex reassignment surgery was not medically necessary or warranted here. Right, Your Honor, we have two separate arguments. So the argument that Chief Judge Wood and I were discussing was our first argument, which is for qualified immunity purposes, there is no case law on point. We have a second argument that even if you were to step away from the clearly established law inquiry and to look at whether there was a constitutional violation on the undisputed facts here, assuming all the facts in favor of the plaintiff, there would not be deliberate indifference. Why is the way that I framed it not a proper qualified immunity framework? Well, they are both qualified immunity questions. There are two bases this court has set. Right, so why can't you put mine in prong two? I mean, you want to characterize it as prong one. Why is it not prong two? Well, Your Honor, the reason for that is I think that it gets into the facts of this case and we think there's a higher level problem, which is that we were facing here a request for a novel kind of surgery on which there was no scientific evidence, not a single study in the prison context. Is that true or is that a disputed issue of fact? I know that was your position on it for sure, but didn't the district court find a disputed issue of fact on that, which you might win on at trial, of course, but you might lose? Not at all, Your Honor. If you look at a required separate appendix on page 19, what the district court found was that the only factual dispute that would be at trial was whether sex reassignment surgery was medically necessary. The district court did not find that there was dispute about whether there was scientific literature as to whether sex reassignment surgery... Well, you know, that was clearly there, but I guess I'm worried if we go to the more specific level that Judge Scudder is talking about, I'm worried about disputed issues of fact and I'm also worried about what people are calling the blanket ban, which whether that's about equal protection and whether it's about the Eighth Amendment, I suppose, is at issue, but she can never satisfy, until she's 70 years old, the one year living as a woman outside the prison context criterion because she lives in the prison. So in her case, as a practical matter, it's a never. What our expert discussed was that, in the current context, we have no ability to solve the conundrum of the real-life experience requirement. But you're considering it a stronger requirement than the guidelines consider it. You've decided, and I guess, again, I wonder, is it a disputed issue of fact? Is there some, because her experts, of course, said, no, she's had enough experience living as a woman in this male prison. She's done the real-life thing. So some people think she's done the real-life thing. You say, no, she hasn't. So it's important to understand that we are in the deliberate-indifferent context. The battle of the experts that the district court envisioned would not be sufficient. It could be that after a battle of the experts, this district court agrees with their experts over our experts. So would you agree that there's deliberate indifference if there's a known cure for a medical condition that the prison just says, well, we're just not going to give that? Would that be deliberate indifference? If there's a known cure and there's no dispute. Yeah, I mean, hypothetically. I'm not educated. If there's no dispute as to efficaciousness, and then the inference would be that they did not make a medical judgment. The medical judgment, as this court said in the Zaya case, was just mere pretext. And they were just punishing the person for being difficult or something. So if the relevant national set of specialists, the relevant urologists, or the relevant somebody else, heart surgeons, said, this is what you do for this situation. The prison just said, but we're not going to do it. That would count as deliberate indifference? Right, that would count as deliberate indifference. But here we're talking about that second argument about if we get away from the clearly established law aspect. We're talking about the part where even if you define clearly established law at a high level of generality. Whether accepting all of the facts as pled by the plaintiff. But why is it a high level of generality if you say, in the Estelle against Gamble context, can the prison refuse to give medically necessary care to an inmate? Why is that highly general? I think I would point to your Honor's decision, recent decision in Mitchell. This court in Pettis had said that at a higher level, you cannot unreasonably delay giving treatment. And this court had before it in Mitchell an inmate that said, well you waited 11 months to give, 13 months to assess whether I would get hormone therapy. And this court didn't say, and your Honor didn't say, well as a higher level of generality. In Pettis we said that this would be clearly established. What you said is, we need cases. Because this is a novel area, we need cases showing that 13 months is too long to wait. And this court did not find cases like that. Sure, so for that medical condition, it's a 13 month delay. I mean I'll give you breast cancer, it develops very slowly. Prostate cancer develops very slowly. So by disease, you may say 13 months is fine.  But you're told, well we're still testing. We're going to wait 13 months before we do anything about it. And you probably don't have any complaint. But I think the clear import of your Honor's decision in Mitchell, as I understand it, is because we had a novel context. In order to subject an official to personal damages liability, we needed something on point. And what was the case law that the defendants here had when they were considering this decision? They had no Supreme Court case law on point on denial of sex reassignment surgery. They had no case law for this. See there you go to like procedure by procedure. I guess I didn't quite get that. Right, Your Honor. And I think the question of whether you go procedure by procedure or not is based upon how obvious it is. And I think I would go back to my answer to Your Honor's AIDS hypothetical. Here it's obviously not obvious. We only had one court of appeals decision on point at the relevant time. That was the First Circuit and Bank decision. And the First Circuit has said that there was no necessity under the deliberate indifference standard to provide sex reassignment surgery. That was the case law that the defendants were facing. Now it's important to know that the U.S. Supreme Court has said that the only way that you could have damages liability, personal damages liability, notwithstanding qualified immunity, is that it would be under the case law beyond debate, that it's unconstitutional. Clearly at the time the decision was made, it was not beyond debate whether the First Circuit and Bank was completely wrong, whether there was no court of appeals guidance from this court or the U.S. Supreme Court to the contrary. Now with regard to that second point about whether even if the court defines a clearly established law at a high level of generality, there would be a violation of constitutional rights. What is important to note is that this is a deliberate indifference case. So that the plaintiff would need to have evidence, allegations, that this was deliberate. That the decision not to provide sex reassignment surgery was not the genuine, even if arguably mistaken, process of a medical judgment, but rather that contrary to the claims of medical judgment, that this was spite or something else like that. Here there is absolutely nothing like that. What the defendants had before them was the very careful, studied Osborne report. And that report, I think, shows the tension that was indicated here. And they followed the medical advice, and there was no deliberate indifference as a result of that. If I could reserve the balance of my time. Certainly. Mr. Diedrich? May it please the Court. Joseph Diedrich for the plaintiff, Nicole Campbell. This case is about medical judgment. In Pettys v. Carter, this court talked about medical judgment at length. And even the dissenters in that Anbach decision said that medical judgment was the irreducible constitutional minimum, tracing it all the way back to Estelle v. Gamble. So what Mr. Tselin urges is that because the medical profession, as he sees it, is divided about the necessity of sex reassignment surgery, it's actually impossible to have a deliberate indifference finding against that factual backdrop. First of all, I think there's evidence in the record that suggests the medical community is not divided about the efficaciousness of sex reassignment surgery. Well, Osborne seems to be. Maybe she's not part of the medical community. More directly, there's evidence in the record sufficient to establish a dispute of fact, as the district court recognized, about whether medical judgment was exercised in this case. We have the defendant's testimony that they just don't do sex reassignment surgery in the Wisconsin Department of Corrections. We have, building on this court's decision in Roe v. Alea from 2011, before any of the events in this case took place, that the absence of professional judgment can be shown with evidence that no minimally competent professional would have responded in the way that the defendants did. Here, the district court said that Gamble had adduced evidence that, quote, certainly fulfilled the no minimally competent professional standard. That's at page 17 of the district court's decision. We also have the policy, the written policy, 570.27. Can I just pause and say on that, I'm thinking of standards of review. Yes, I remember the district judge said that. Perhaps Mr. Staitland is arguing that that's a clearly erroneous fact. I don't know. He can't really be finding facts in a way that we can review anyway at this point. Correct, Your Honor. But there is conflicting evidence in the record, you would agree. Certainly Osborne isn't a big fan. She keeps, and the defendants repeat this about 75 times in their brief, that it's a social experiment and blah, blah, blah. Yes, the district court recognized that there are disputes of fact in this case. At the posture we're in, this court, based on its previous case law in this context, says that it cannot review the district court's determination about whether a dispute of fact exists. And so this court takes it as it comes from the district court. So you're saying that one of those facts is that sex reassignment surgery is an accepted and sometimes necessary treatment for gender dysphoria? Yes, and not only is it accepted, but it is not experimental, it is not cosmetic, it is not elective, and in many cases it is the only effective treatment to treat gender dysphoria, even after hormone therapy has been administered to its fullest extent, which in Campbell's case, she's had hormone therapy since 2014 at an optimal level. And yet she continues to suffer, she continues to report that to her physicians, and there's also evidence that since 2014, the defendants have not provided additional care beyond what was established then. I encourage the court to read Osborne's lengthy report in full, and that report is subject to varying interpretations, which this court in Jackson v. Curry said is not subject to the Scott v. Harris rule, where we can... Scott v. Harris was the Supreme Court... This is not a videotape of speeding. Okay, thank you, that was the point that I was going to make. The existence of a factual dispute on these fundamental questions suggests that the defendants are entitled to qualified immunity, in this case, from damages liability, because they cannot have been deliberately indifferent to something about which you're arguing there is a dispute of fact in the medical community. Especially on this record, where they followed the accepted guidelines, the WePath guidelines that everyone agrees are the applicable national medical protocol for cases of this type, and the report of an outside expert. So that, by definition, is the exercise of medical judgment. They followed the medical protocols that everybody accepts and applies universally across the country. You've got somebody who questions that, but you don't dispute that they are medically accepted and applied across the country. And they consulted an outside expert and followed her recommendations. So that, by definition, is a case for qualified immunity. They exercise medical judgment. I disagree with your characterization of the case. I think the facts show that... The defendants brought forth facts that they followed Osborne's report and that they exercised medical judgment. The plaintiffs brought forth facts that no medical judgment was exercised here. And you're saying that the district judge didn't say, some say yes, some say no. The district judge said, everybody says that sex reassignment surgery is the necessary move at this point. I mean, just to be clear, because you would lose for sure. If ten doctors said it's a good idea and another five doctors said, no, it's a bad idea, the defendants are entitled, certainly they're not at risk of damages if they choose to go with the five doctors. But I understood you to be saying that the district judge accepted that everybody says that the only responsible medical thing, even though it's not done very often. There's other evidence, at least not in the prisons, there's other evidence in the record that pushes against that conclusion. Yes, Your Honor. And that leads me to my point that Campbell, in this case, in this posture, is not suggesting that there is a general constitutional right to sex reassignment surgery for all prisoners with gender dysphoria. She's saying that in her particular case, which is the phrase that Your Honor used in Mitchell v. Callis from earlier this summer, when defining qualified immunity, when framing the right at issue, we have to look at the appropriate treatment for the particular case. And here there is sufficient facts in the record to suggest that the defendants never exercised medical judgment. And here at this posture, we don't have to resolve that factual dispute. We just have to recognize, as the district court did, that there is a factual dispute about the exercise of medical judgment. And you would agree if they did exercise medical judgment, then Campbell can't prevail. That's a loss on the merits. They're entitled to exercise medical judgment against a backdrop of a confusing set of opinions in the medical profession. I don't know that I would go so far, Your Honor. You did raise a second clearly established right that the defendants persisted in a course of treatment that was ineffective and that they knew to be ineffective. Osborne, in her 2014 report, one of the things she said is that based on Campbell's severe gender dysphoria, it is unlikely that her condition will alleviate or remit without SRS or further interventions. And since 2014, Campbell has not received any, obviously, sex reassignment surgery or further interventions. And so even if we accept that the defendants followed Osborne's report, they did not provide what Osborne said was needed, namely further treatment of some kind. So let me ask you, there was a brief reference in these materials to the point that after some period of time, which I wasn't sure whether it was defined or not, that hormone treatment itself for male-to-female sex reassignment becomes dangerous, risks of embolism, risks of other things. Where did that evidence come from? Your Honor, there is reference at least in Dr. Oriel's expert report, and there may be evidence elsewhere in the record, that talks about the long-term risk of hormone therapy. I also would refer the Court to the Norsworthy Beard decision from the Northern District of California, where that was at issue. Campbell here has some risk of blood clots. She has a family history that's also documented in the Oriel expert report. So those are further facts to suggest that Campbell's treatment is short of effective or short of what is needed for her particular case. I do want to address what the Court alluded to a little bit earlier about the blanket ban. So the Court did use the phrase, quote, the policy by its terms is not a blanket ban. That was on page 20 in the equal protection context. Importantly, earlier in the opinion in the Eighth Amendment context, it expressly left open the question of whether the defendant acted with deliberate indifference by enforcing the DOC policy. That's on page 15. Importantly, too, the blanket ban... But the notion being that the DOC policy for people who don't have the full year before they show up in the prison is impossible to comply with. Correct. And the District Court also said that the policy by its terms is not a blanket ban. So that's a finding that facially it's not invalid. But the District Court didn't decide one way or another whether it's, as applied to Campbell, invalid. And we submit that when you take that policy and apply it to Campbell's situation, there's no way that Campbell will ever be eligible for sex reassignment surgery. And that statement that the District Court made about the blanket ban, that was just talking about the written policy. It's not talking about the defendant's testimony. For example, we have Mr. Greer saying that we just don't do sex reassignment surgery in our prison. We have Dr. Anders saying that defendant Callis told him that they don't do sex reassignment surgery. And there are others that we listed in our brief. Could they mean something innocuous, like we would just send somebody out to the University of Wisconsin hospitals for that? I mean, this is complex surgery. There's at least a reasonable inference from which a jury could find that that's not what they meant. And when you add all of those statements together, I think it's pretty clear, at least for the posture of this appeal, that there was some sort of policy or unwritten practice against providing sex reassignment surgery to any inmate, especially an inmate in Campbell's position. Further, that statement about the blanket ban does not take into account what I said about Roe earlier, in the no minimally competent professional standard, which again the district court expressly recognized was satisfied here, at least for the purposes of going to trial. And again, under Petty's, that goes to subjective intent. And the defendants in their brief talked about how the district court allegedly converted what should be a subjective standard of deliberate indifference into a purely objective one. And again, I think that that is an incorrect argument. The district court on page 16 quoted Petty's at length. And Petty's was basically a treatise on all of the different types of evidence from which a jury or a fact finder could infer a sufficiently culpable state of mind, a subjective intent. And among those were persisting in a course of treatment known to be ineffective, substantial departure from accepted professional judgment practice or standards as to demonstrate a lack of judgment. And Petty's also expressly talked about the no minimally competent professional would have so responded under those circumstances. No, sir. Anyway, I'm trying to figure out how your electrolysis evidence fits in here. And your opponents say, well, certainly it's not a stand-alone thing because it's cosmetic, not medical. But is the refusal to give her electrolysis, which is a pretty simple procedure done in beauty salons and so on, you don't have to go to a doctor for it. Is that some evidence that their decision not to give SRS is motivated on hostility to SRS as opposed to medical considerations? I'm not sure I entirely understand Your Honor's question. Well, I'm just saying they're not giving her electrolysis, one. Stand-alone claim, your opponents are opposing it by saying it's not medical so they have a label for it. Let's assume they're right. Is the decision not to do that, though, does it shed some light on their refusal to schedule the sexual reassignment surgery? I think it may be, again, part of the collective of facts from which a fact finder could infer, and at summary judgment, at an interlocutory appeal, something that this court basically has to take. Again, the court has to view the facts in the light most favorable to Campbell. That's a phrase that comes up again and again in cases in this posture. And the electrolysis and the makeup issue is also an issue of individualized judgment because Callis says that these are not currently permitted and I don't anticipate they will be available. That's at separate appendix, page 3. With my remaining time, I want to reiterate that we are here in the middle of a case, a case that has gone on for a long, long time. The practical reality is that no matter who prevails here, we're going to go back to the district court with no further discovery, a trial on a single substantive claim, which makes this case unique and comparable to Scott v. Lacey. And in short, there's not going to be any immunity from the burdens of litigation, yet the appeal does have consequences, the use of this court's time, uncertainty for the defendants, and the potential for harm to the plaintiff. This court should overrule Scott v. Lacey, dismiss this appeal for want of jurisdiction, and the alternative, deny qualified obligation. Thank you. All right. Thank you, Mr. Deidre. Anything further, Mr. Titman? Thank you, Your Honor. There was some discussion during my friend's presentation as to what is in dispute here. I think it's important to look at required supplemental separate appendix, page 19, where the district court explains what it intends that will happen in trial. And here's the quote. Whether sex reassignment surgery is medically necessary for Campbell must be resolved at trial. Resolving this issue will entail resolving subsidiary issues, whether the real-life experience is invariably a prerequisite for sex reassignment surgery, whether the real-life experience can be adequately achieved in the prison setting, and if some real-life experience is required, whether Campbell has completed it. That is a classic battle of the experts. Well, except that, let's go two pages earlier. Let's go to page 17, where the judge says, Defendants argue that Campbell cannot show deliberate indifference, the subjective requirement, because her experts haven't explicitly stated that no minimally competent medical professional would deny those treatments to her, but the expert opinions Campbell adduces certainly fulfill the no minimally competent professional standard, even if they don't use that exact phrase. So we have to accept that as a fact right now, obviously. If there were trial, it would be contestable. And so if no minimally competent medical professional would say no, then doesn't that move us over into these more subjective things? What this court said in Zaya was a disagreement among experts. It's not a disagreement. He's saying there is no disagreement among experts. But what this court said in Zaya, even if the second expert is saying the first one was unreasonable, that is not enough. But that's not what he says. I mean, if he said what you say he's saying, that's one thing. But he says the opposite. He says no one would say this. No, what this court said in Zaya was that- No, I'm not talking about Zaya. I'm talking about this finding of fact and whether we can set it aside. Zaya's hypothetical was exactly this finding of fact, which is that the simple statement that the second expert thinks the first expert was unreasonable is categorically, legally insufficient to show a deliberate indifference. That is exactly what this is, which is one of the two reasons qualified immunity is required. All right. So you're just saying we have to disregard this fact finding of the district court. If that's your position, that's your position. Our position is that what is here is not sufficient to overcome the clear protections of qualified immunity. Osborne's not a doctor. That's correct, Your Honor. Dr. Kallis is a doctor, however, and Dr. Kallis uses medical judgment, relying on Osborne, which was the same expert that was relied upon in the First Circuit's en banc decision returning to the court. Osborne goes all over the country doing this, as a matter of fact. I'm not sure if that's a plus or a minus, but that's her business. Well, we are here on qualified immunity, and we had the only court of appeals decision that these defendants could look to said there was no denial of constitutional rights, in part based on Osborne. So I think that's a paradigmatic case for qualified immunity. Okay. Thank you, Your Honor. Very good. Thank you very much. Thanks to both counsel. We'll take the case under advisement.